IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHAWN HOPE, | ) | CASE NO. 4:24-CV-02010-JPC |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE J. PHILIP CALABRESE |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| WARDEN TOM WATSON, | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| Defendant. | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2. Before the Court is the Petition of Shawn Hope ("Hope" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Hope is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State of Ohio v. Shawn Hope*, Trumbull County Common Pleas Court Case No. 2017-CR-252. The undersigned recommends that the Petition be DENIED because it is time barred.

## I. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011). The state appellate court summarized the facts underlying Hope's conviction as follows:

> {¶4} On December 1, 2016, Mr. Hope was playing cards with Alicia Binion, Tabitha Powell, and John Paul Kellar at a house located at 2313 Stephens Avenue, NW in Warren, Ohio. Ms. Binion resided at the house with Mr. Kellar, whom she described as her cousin, and Ms. Powell, who was engaged to Mr. Kellar. Ms. Binion was acquainted with Mr. Hope because she had been a drug user and purchased drugs from him.

{¶5} At some point, Mr. Hope made advances toward Ms. Powell and Ms. Binion, and he and Mr. Kellar began arguing. The argument lasted only a few minutes and was resolved. Ms. Binion eventually asked Mr. Hope to leave the residence, which he did.

{¶6} The following day, Ms. Binion, Ms. Powell, and Mr. Kellar were at the Stephens Avenue residence. Ms. Powell was in the back bedroom with Mr. Kellar rubbing his feet. Ms. Binion was getting ready to leave the residence to obtain money for the purchase of drugs.

{¶7} At approximately 6:30 p.m., Mr. Hope knocked on the door. Ms. Binion did not want to answer the door, but Mr. Kellar told her to do so. After Ms. Binion answered the door, Mr. Hope came inside and asked where Mr. Kellar and Ms. Powell were located. He began walking toward the back bedroom. Mr. Kellar walked out into the hallway to meet him. Mr. Hope had his hands in his coat pockets. Suddenly, Mr. Hope removed a gun from his coat pocket and shot Mr. Kellar twice in the chest area at close range. Mr. Hope then said, "Who's the bitch now?" and kicked Mr. Kellar.

{¶8} Mr. Hope then pointed the gun at Ms. Powell and demanded she give him the keys to her van. He grabbed her by the hair and threw her against the wall. Ms. Binion eventually gave the keys to Mr. Hope.

{¶9} Mr. Hope forced the two women into the van by gunpoint. He ordered Ms. Powell to drive the van a few streets over and had the two women get out, walk through some backyards, and lie down on their stomachs on the porch of a house on Ward Street.

{¶10} Mr. Hope knocked on the window of the house, and Rashaan Shipp came to the door. Mr. Hope asked him for "another clip," and Mr. Shipp refused.

{¶11} The trio returned to the van, and Mr. Hope drove them to a drive-thru to purchase cigarettes. He then drove to a gas station on Market Street. Mr. Hope and Ms. Binion entered the gas station while Ms. Powell stayed in the back seat. Ms. Powell seized the opportunity to escape the van and hide underneath a vehicle parked across the street. She eventually ran to a residence, where a woman placed a 9-1-1 call on her behalf.

{¶12} Officer Mason Henline of the Warren Police Department was dispatched to Market Street and met with Ms. Powell. She got in his cruiser and took him to the Stephens Avenue residence. In securing the residence, Officer Henline found Mr. Kellar inside the house. He was not breathing and had no pulse. According to the coroner's report, Mr. Kellar died from multiple gunshot wounds.

{¶13} Detectives Carney and Laprocina were dispatched to the Stephens Avenue residence to investigate. Detective Carney also issued a country-wide alert for Mr. Hope and the van. At the residence, there were no signs of a fight or a struggle. The detectives discovered and collected two fired cartridge cases and two fired bullets.

{¶14} Meanwhile, back at the gas station, Mr. Hope realized Ms. Powell had escaped from the van. Mr. Hope decided he and Ms. Binion had to go to Detroit, Michigan, his hometown.

{¶15} Mr. Hope drove the van as he and Ms. Binion traveled from Warren, Ohio toward Detroit, Michigan via the turnpike. Mr. Hope attempted to exit the turnpike in the Toledo area but was unable to pay the toll and had no driver's license. The toll booth attendant informed Mr. Hope she was required to call the state highway patrol. Mr. Hope pulled off near a rest area, left the vehicle, and kicked the gun under a salt bin.

{¶16} Mr. Hope and Ms. Binion eventually arrived in Detroit via a different route. They stayed there for ten days and moved from place to place doing drugs. They eventually left the van on the side of the road, and it was never recovered. Mr. Hope also asked Ms. Binion to write a letter saying he shot Mr. Kellar in self-defense.

{¶17} At some point, Mr. Hope permitted Ms. Binion to leave, and they separated. She walked to a store, and a couple bought her a bus ticket back to Warren, Ohio. The next morning, on December 14, 2016, she went to the Warren Police Department.

{¶18} Ms. Binion took Detectives Carney and Laprocina to the area on the turnpike where Mr. Hope had disposed of the gun. A toll booth collector, however, had discovered the gun under the salt bin on December 5, 2016 and gave it to Trooper Cheryl Myers of the Ohio State Highway Patrol. Detective Laprocina eventually retrieved the gun from the Ohio State Highway Patrol.

{¶19} Michael E. Roberts, a forensic scientist at the Ohio Bureau of Criminal Investigation ("Ohio BCI"), examined the gun, bullets, and cartridge cases that were submitted for analysis. Mr. Roberts concluded the gun was operable and the submitted bullets and cartridge cases were fired from the submitted gun.

{¶20} Hallie Dreyer, a forensic scientist at Ohio BCI, conducted DNA analysis on the gun, the two fired cartridge cases, and the front exterior screen door handle. Using Y-STR DNA testing, Ms. Dreyer obtained a partial DNA profile from one of the cartridge cases that was consistent with Mr. Hope.

> {¶21} An arrest warrant for murder was issued for Mr. Hope. On March 30, 2017, Officer Jason Matter of the Michigan State Police and the Fugitive Apprehension Team was assisting the Northern Ohio Violent Fugitive Task Force in locating and apprehending Mr. Hope in Detroit, Michigan. A male fitting Mr. Hope's description was seen getting into a vehicle leaving the location they were observing. Officer Matter requested that Mr. Hope stop, but he fled instead. The officers set up a perimeter of the area and conducted house-to-house searches. Officer Michael Knox eventually apprehended Mr. Hope, who was hiding under a porch. Detectives Carney and Crites subsequently transported Mr. Hope back to Warren, Ohio.

*State v. Hope*, 2019-Ohio-2174, ¶¶ 4-21, 137 N.E.3d 549, 559–61.

## II. Procedural History

### A. Trial Court Proceedings

On April 18, 2017, the Trumbull County Grant Jury issued an indictment charging Hope with two counts of aggravated murder with a firearm specification, aggravated robbery with a firearm specification, two counts of kidnapping with a firearm specification, having weapons while under disability, and tampering with evidence. (Doc. No. 11-1, Ex. 1.)

Hope waived his right to a speedy trial three times. (*Id*., Ex. 3-5.)

Hope moved to sever his weapons while under disability county from the jury trial. (*Id*., Ex. 6.) The State filed a brief in opposition. (*Id*., Ex. 7.) The trial court denied the motion. (*Id*., Ex. 8.)

On September 26, 2017, Hope moved for appropriation of funds for consulting a DNA expert. (*Id*., Ex. 9.) The trial court granted the motion. (*Id*., Ex. 10.)

On March 9, 2018, Hope's counsel filed a motion to withdraw after learning Hope filed a grievance against him. (*Id*., Ex. 11.) The trial court denied the motion and assigned additional defense counsel. (*Id*., Ex. 12.)

Following trial, on April 12, 2018, a jury found Hope guilty of all counts and specifications. (*Id*., Ex. 13, 14.)

On May 8, 2018, the trial court sentenced Hope to an aggregate term of life imprisonment, with eligibility for parole after serving forty-four years. (*Id*., Ex. 15.)

**B. Direct Appeal**

On June 5, 2018, Hope filed a Notice of Appeal. (*Id*., Ex. 16.) In his merits brief, Hope raised the following assignments of error:

> 1. The evidence against Shawn was insufficient to support his convictions (Tr. at 593).
>
> 2. Shawn's convictions were not supported by the manifest weight of the evidence (T.p. 593).
>
> 3. Shawn's sentence was contrary to law (T.p. 691).
>
> 4. Shawn received ineffective assistance of counsel (T.p. 21-22).
>
> 5. The jury verdict forms were incorrect (T.p. 686).

(*Id*., Ex. 17.) After motion practice, Hope filed a supplement to his brief to add another assignment of error:

> 6. The prosecutor committed misconduct by characterizing Shawn as a monster (T.P. 692-693)

(*Id*., Ex. 20.) The State responded. (*Id*., Ex. 21.) On June 3, 2019, the appellate court affirmed the judgment and remanded for a nunc pro tunc entry to correct a clerical error. (*Id*., Ex. 22.)

On June 5, 2019, the trial court filed a nunc pro tunc entry. (*Id*., Ex. 23.)

On November 25, 2019, Hope, *pro se*, filed an untimely Notice of Appeal to the Supreme Court of Ohio. (*Id*., Ex. 24.) The same day, Hope filed a Motion for Leave to File to File Delayed Appeal to the Supreme Court of Ohio. (*Id*., Ex. 25.) The state filed a brief in opposition. (*Id*., Ex. 26.) On January 21, 2020, the Supreme Court of Ohio denied Hope's motion for a delayed appeal. (*Id*., Ex. 27.)

**C. Post-Conviction Filings**

On July 22, 2019, Hope, *pro se*, filed Petition to Vacate or Set Aside Judgment of Conviction Post-Conviction Relief; R.C. 2953.21. (*Id*., Ex. 28.) In response, the state moved for summary judgment. (*Id*.,

Ex. 29.) On August 21, 2019, Hope filed Motion for Judicial Notice Article II, Rule 201 Motion for Atentication [*sic*] and Indentification [*sic*] Art. IX, Rule 901-03. (*Id*., Ex. 30.) On August 23, 2019, Hope filed a response to the State's motion for summary judgement. (*Id*., Ex. 31.) On September 24, 2019, the trial court granted the State's motion for summary judgment and dismissed Hope's Petition. (*Id*., Ex. 32.) Hope did not appeal.

On October 3, 2019, Hope filed a motion for summary judgment. (*Id*., Ex. 33.) The state filed a brief in opposition. (*Id*., Ex. 34.) On October 31, 2019, the trial court denied Hope's motion for summary judgment as moot. (*Id*., Ex. 35.) Hope did not appeal.

**D. State Habeas Petition**

On September 18, 2023, Hope filed a habeas corpus petition to the Supreme Court of Ohio. (*Id*., Ex. 36.) Hope raised the following errors:

> CLAIM I: IT WAS "PLAIN ERROR" TO ALLOW PETITIONER TO EXPLICITLY BE DENIED HIS RIGHT TO DUE PROCESS WHERE HIS CONVICTION OF AGGRAVATED MURDER IS BASED UPON A RECORD WHOLLY DEVOID OF ANY RELEVANT EVIDENCE OF CRUCIAL ELEMENTS OF THE OFFENSE CHARGED.
>
> CLAIM II: THE U.S. CONSTITUTON GUARNTEES ONE WAY TO CHALLENGE OR VERIFY THE RESULTS OF A FORENSIC TEST: CONFRONTATON; PETITIONER IS DENIED CONFRONTATION THROUGH A WITNESS WHO DID NOT CONDUCT THE SCIENTIFIC TESTING THAT RESULTS IN STRUCTURAL ERROR.
>
> CLAIM III: THE ADVERSARY PROCESS ITSELF BECOMES PRESUMPTIVELY UNRELIABLE WHERE AT CRITICAL STAGES OF THE PROCEEDINGS COUNSEL DOES NOT AFFORD PETITIONER A MEANINGFUL OPPORTUNITY TO PRESENT A COMPLETE DEFENSE AND TO HAVE COMPULSORY PROCESS FOR OBTAINING WITNESSES AND EVIDENCE IN HIS FAVOR THAT RESULT IN STRUCTURAL ERROR.

(*Id*.) On November 7, 2023, the Supreme Court of Ohio dismissed the petition. (*Id*., Ex. 37.)

### E. Federal Habeas Petition

On November 18, 2024, the Court docketed Hope's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) The petition failed to include grounds for relief, so the Court ordered Hope to file an amended petition. (Doc. No. 3.) On January 13, 2025,[1] Hope filed his Amended Petition for Writ of Habeas Corpus and asserted the following grounds for relief:

> **GROUND ONE:** Petitioner was denied his constitutional rights when the State court convicted him based upon insufficient evidence.
> **Supporting Facts:** The State court proceedings resulted in a decision that was contrary to clearly established Federal law.
>
> **GROUND TWO:** Petitioner was denied his Sixth Amendment Constitutional Right to Confrontation.
> **Supporting Facts:** See Attached Memorandum
>
> **GROUND THREE:** Petitioner was denied his Fourteenth Amendment rights of a meaningful opportunity to present a complete defense.
> **Supporting Facts:** State Court proceeding resulted in a decision that was contrary to and based upon an unreasonable application of Federal law. (See Attached Memorandum) Petitioner received ineffective assistance of counsel.

(Doc. No. 4.)

On July 2, 2025, Warden Tom Watson ("Respondent") filed his Return of Writ. (Doc. No. 11.) Hope filed a Traverse (Doc. No. 12) and Respondent filed a Sur-Reply to Traverse (Doc. No. 13).

## III. Law and Argument

### A. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides a one-year limitations period in a habeas action brought by a person in custody pursuant to the judgment of a State court. Under 28 U.S.C. § 2244(d)(1), the limitation period runs from the latest of –

---

[1] Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities. *See Houston v. Lack*, 487 U.S. 266 (1988). Petitioner stated he deposited his Petition in the institution's internal mail system on January 13, 2025. (Doc. No. 4-2.) Thus, the Court will consider the Petition as filed on January 13, 2025.

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

**B. One-Year Limitation**

As there is no indication that § 2244(d)(1)(B)-(D) apply here, Hope's AEDPA's one year limitation period runs from "the date on which [his] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Judgment was entered May 8, 2018. (Doc. No. 11-1, Ex. 16.) The Ohio Court of Appeals affirmed the judgment on June 3, 2019. (*Id.*, Ex. 22.) Hope failed to timely appeal to the Supreme Court of Ohio and instead moved to file a delayed appeal on November 25, 2019. (*Id.*, Ex. 25.) On January 21, 2020, the Supreme Court of Ohio denied the motion. *State v. Hope*, 137 N.E.3d 1198 (Ohio 2020). Thus, the statutory deadline to file a petition for federal habeas relief started 45 days after the appellate court decision. *See* Ohio S. Ct. Prac. R. 7.01(A)(1). The habeas limitations period commenced on July 18, 2019, and ended on July 18, 2020.

**C. Statutory Tolling**

As this Court noted in *Jacobs v. Forshey*, No. 5:21-CV-02332-BYP, 2023 WL 5311014, at *5 (N.D. Ohio July 25, 2023), *report and recommendation adopted,* No. 5:21CV2332, 2023 WL 5309919 (N.D. Ohio Aug. 17, 2023):

> AEDPA tolls the one-year limitations period during the time "'a properly filed application for State postconviction or other collateral review . . . is

> pending.' § 2244(d)(2)." *Evans v. Chavis*, 546 U.S. 189, 191, 126 S.Ct. 846, 163 L.Ed.2d 684 (2006); *Carey v. Saffold*, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002); *accord Matthews v. Abramajtys*, 319 F.3d 780, 787 (6th Cir. 2003) A timely filed state post-conviction matter, however, cannot serve to toll a statute of limitations which has already expired before the motion was filed. *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003). Section 2244(d)(2)'s tolling provision "does not . . . 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Vroman*, 346 F.3d at 602 (citation omitted). Further, if a state court ultimately denies a petition as untimely, that petition was neither properly filed nor pending and a petitioner would not be entitled to statutory tolling. *See Monroe* at *2; *Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir. 2007).

On July 22, 2019, Hope filed for post-conviction relief in the trial court. (Doc. No. 11-1, Ex. 28.) This filing tolled the statute of limitations. 28 U.S.C. § 2244(d)(2). On November 6, 2019, the trial court filed a judgment entry granting summary judgment in favor of the state. (Doc. No. 11-1, Ex. 35.) Hope did not appeal the trial court's decision. The AEDPA statute of limitations resumed 30 days after the trial court entered judgment. See Ohio App. R. 4(a). Thus, the AEDPA statute of limitations resumed on December 6, 2019, and ended on December 1, 2020.[2]

As the statutory limitations period expired on December 1, 2020, and Hope did not file his habeas petition until 2025[3], the Court finds the Petition is about four years late and is untimely under §

---

[2] Hope also filed a state habeas petition. (Doc. No. 11-2, Ex. 36.) A state habeas petition does not toll AEDPA's statute of limitations unless it is based upon a claim of lack of subject-matter jurisdiction. *Robinson v. Henderson*, Case No. 3:23-cv-89, 2024 WL 4856061, at *9 (N.D. Ohio Nov. 21, 2024). Hope's state habeas petition does not challenge the jurisdiction of the trial court, so his state petition does not toll the AEDPA limitations period.

[3] Hope's initial federal petition was filed in November 2024, but he failed to raise his grounds for relief. (*See* Doc. No. 1.) Hope filed his Amended Petition in January 2025. (Doc. No. 4.) While an amended petition can relate back to an original petition (Fed. R. Civ. P. 15(c)(1)(B)), the original petition must state claims for the relation back doctrine to apply. *See Mayle v. Felix*, 545 U.S. 644, 664 (2005). Regardless, both the original petition and the amended petition are untimely.

2244(d)(1)(A). Therefore, unless equitable tolling is appropriate, Hope's Petition should be dismissed as time barred. § 2244(d)(1)(B)-(D).

**D. Equitable Tolling**

This Court explained equitable tolling as follows:

> The AEDPA statute of limitations is subject to equitable tolling. *Holland v. Florida,* 560 U.S. 2549, 2560, 2562 (2010). Equitable tolling "allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010). *See also Hall v. Warden, Lebanon Correctional Institution*, 662 F.3d 745, 749 (6th Cir. 2011). However, the equitable tolling doctrine is granted by courts only "sparingly." *See Robertson*, 624 F.3d at 784. Moreover, "although 'the party asserting statute of limitations as an affirmative defense has the burden of demonstrating that the statute has run,' the petitioner bears the ultimate burden of persuading the court that he or she is entitled to equitable tolling." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir.2011)(quoting *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002)).
>
> A habeas petitioner is entitled to equitable tolling only if he establishes "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (internal quotations omitted). It is [Petitioner's] burden to establish his entitlement to equitable tolling. *See Reed v. Smith*, No. 5:17-CV-P51-TBR, 2017 WL 2663693, at *2 (W.D. Ky. June 20, 2017) (declining to review equitable tolling where it did not appear that petitioner made an equitable tolling argument). The Sixth Circuit has repeatedly held that "ignorance of the law alone is not sufficient to warrant equitable tolling." *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991). *See Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004); *Allen v. Bell*, 250 Fed. Appx. 713, 716 (6th Cir. 2007); *Taylor v. Palmer*, 623 Fed. Appx. 783, 789 (6th Cir. 2015). *See also Johnson v. United States*, 544 U.S. 295, 311, 125 S.Ct. 1571, 161 L.Ed.2d 542 (2005) ("[w]e have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness"); *Patrick v. Bunting*, 2015 WL 10488878 at * 9 (N.D. Ohio Dec. 29, 2015). Moreover, courts within this Circuit have found a petitioner's *pro se* status, lack of legal training, poor education, and/or limited law-library access, standing alone, are similarly insufficient. *See e.g., Hall*, 662 F.3d at 751 (petitioner's *pro se* status, limited law-library access and lack of access to trial transcript were not sufficient to warrant equitable tolling); *Keeling*, 673 F.3d at 464 ("Keeling's *pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and to excuse his late filing"); *Burden v.*

> *Bunting*, 2016 WL 5417834 at * 6 (N.D. Ohio July 15, 2016) ("Courts have uniformly held that neither a prisoner's *pro se* status nor his lack of knowledge of the law constitute extraordinary circumstances justifying equitable tolling"); *Johnson v. LaRose*, 2016 WL 5462635 at * 10 (N.D. Ohio July 8, 2016) ("A petitioner's *pro se* status and his unawareness of the law provide no basis for equitable tolling").

*Jacobs*, 2023 WL 5311014, at *6.

Hope filed a Traverse yet made no argument that he is entitled to equitable tolling. (*See* Doc. No. 12.) The undersigned finds Hope has not met his burden to establish his entitlement to equitable tolling. *See Reed*, 2017 WL 2663693, at *2. Accordingly, equitable tolling does not apply.

**E. Actual Innocence**

Since Hope is not entitled to statutory or equitable tolling, his petition is time-barred unless he can demonstrate he is entitled to actual innocence tolling. In *McQuiggin v. Perkins*, — U.S. —, 133 S.Ct. 1924, 1928, 185 L.Ed.2d 1019 (2013), the United States Supreme Court held that actual innocence, if proven, may overcome the expiration of AEDPA's one-year statute of limitations. The Court noted that a claim of actual innocence is not a request for equitable tolling but, rather, a request for an equitable exception to § 2244(d)(1). *Id*. at 1931.

"[A]ctual innocence means factual innocence, not mere legal insufficiency." *Rizk v. United States*, No. 22-3834, 2023 WL 5275505, at *2 (6th Cir. Feb. 27, 2023), citing *Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)); *see also Harvey v. Jones*, 179 F. App'x 294, 298-99 (6th Cir. 2006) (noting that a claim of legal innocence does not satisfy the actual-innocence standard) (collecting cases). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Here, Hope does not identify any new evidence, much less new and reliable evidence demonstrating that "no juror, acting reasonably, would have voted to find him guilty beyond a

reasonable doubt." *McQuiggin*, 133 S.Ct. at 1928. Accordingly, the Court finds Hope has not demonstrated he is entitled to the actual innocence exception.

In sum, the undersigned finds Hope's Petition is time-barred and he has not demonstrated that that time-bar should be excused.[4]

## IV. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DENIED.

Date: September 4, 2026

*s/ Jonathan Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**

[4] Respondent also argues that Hope's grounds for relief are procedurally defaulted and fail on the merits. Because Hope's petition is time-barred, the undersigned has not considered those additional arguments.